and I'd like to reserve four minutes for rebuttal. May it please the court, after directing an informant to call Congressman Fortenberry and suggest that illegal donations had been made to his campaign, the federal government prosecuted the congressman in California on charges of making false statements about the call to federal agents in violation of section 1001 because the statements at issue were made in in-person interviews in Nebraska and Washington, D.C. At bottom, the government's theory of venue rests on the proposition that venue lies because of the potential effects of the statements and on the ground that those effects were felt in California where the investigation was being conducted. But for purposes of section 1001, the essential conduct is the making of the false statement. While the statements had been made, oh, I don't know, maybe a witness was traveling or an individual was traveling and they were, I don't know, in the Bahamas or in Mexico or another foreign country, Canada, and they were interviewed there by the FBI. What would happen if they made a materially false statement to that officer? Would that case be able to be prosecuted? I think there are different rules for venue where the conduct takes place internationally. I believe it's section 3238. And we would further concede that when it comes to statements that are being made, for instance, over the telephone, that the conduct can be conceived of having taken place in both jurisdictions. The government makes the point that that's no different from, say, a shooting that takes place across the border. But I think what makes this case different is that by its own concession, the government recognizes that their theory of venue ultimately depends on the fact that the take a look. Before I jump in, the government's just really coattailing on 2nd, 4th, 7th circuits, right, that looked at the so-called effects test. Correct. You're focusing, at least you started to my ear, to focus on the 10th circuit making part. So we start with the statute. Everyone agrees with that. We got to parse the statute. Section one says make. Section two says materially. So how are you going to, we have to make sense of both words. So how are you going to bridge that? Correct. So Judge Donato, the way that we think the analysis works is as follows. The Supreme Court has made clear that when you apply the locus delicti test, you distinguish between essential conduct elements and the other essential elements of the offense. Our submission with regard to section 1001 is that there are essentially four elements. There is the making of the statement or the concealing of the fact. There is the materiality requirement. There is the state of mind requirement. And there is the jurisdictional requirement, namely that the statement be made in a matter within the federal government's jurisdiction. In our view, the latter three elements are essential elements, but they are not essential conduct elements. They are circumstance. The Second Circuit said all that. They agree. Mens rea, jurisdiction not. Essential elements, as far as I can see in every circuit, is the making of a materially false statement. Those are essential elements, but materiality is not a conduct element. And I think the way to understand that. Yeah, why not? Because, you know, material, it's the making of a lie or a false statement, but it's about the gravity of that statement. And so there's some relation, you would think, that bears on the conduct itself. It's the type of false statement that's being made. I disagree with that, Judge Sanchez, and let me explain why. It goes to the content of the statement. The government itself acknowledges that there doesn't have to be any sort of effect on the government, that the government doesn't have to do anything in response to the statement for there to be a 1001 violation. Instead, the question is whether or not the statement itself is capable of affecting a decision maker. And that goes to the content of the statement. So if I say to a government official that I had eggs for breakfast, and in fact I had pancakes for breakfast, that's obviously an immaterial statement. If I say that my wife has been kidnapped, and in fact she has not been kidnapped, that is a material statement because it could cause the government to conduct an investigation based on that statement. And do we measure materiality only at the time the statement is made, or can we look to events that happen after the fact to determine whether there's a potential impact on the decision maker? I think you look at the potential. I think your last point is really the critical point, which is, does this have the potential? Is it capable of influencing a decision maker? But I guess my question is, is this more of a point in time inquiry, or can we think of the potential in a broader sense of a potential later impact as well? I think we're willing to recognize in some sense as a bearing on the materiality argument as well, that there doesn't have to be an ongoing investigation at the time at which the statement is made. It could be that in the wake of the statement, the government would take some action. And that is really, I think, the way that the cases applying Gowden have worked. But I think that the critical point is, this is actually no different from the jurisdictional element. And Judge Donato, to pick up on your last question on this point, the jurisdictional element also looks at the content of the statement. Is this a statement made in a matter within the federal government's jurisdiction? And the Supreme Court has told us that that is a circumstance element. I'm sorry. I didn't mean to step on you. If by saying that, you're suggesting we shouldn't take it into account, I don't think that's right. Now, we have a 2013 case, United States v. King. I don't know if you know it, but we said expressly, materiality is an element of the offense under 1001. And then we went on to say that a misstatement is material on an intrinsic capability of potentially affecting a government agency. So I am concerned. I am concerned. Well, I'm suggesting that in fact, materiality is a conduct element. What I heard you say may be misunderstood but you think it wasn't. I think it is. But in our circuit, we have already said materiality is the intrinsic capability. So you look just at the statement. I am concerned about the Second, Seventh, and Fourth Circuit tests about the effects because, one, the effects can be felt anywhere, which I think leads to a potentially terrible result, not the least of which is, you know, Mr. Fortenberry can afford to have you here and have defense teams and so on. There are a lot of criminal defendants who couldn't and I could see the government exploiting the idea that, well, you know, you talk to someone in Miami, I know you live in Milwaukee, we're going to make you come down there unless you, you know, see it our way, plead guilty, do something. So I'm worried about that. I'm also worried about an endless chain of causation as it gets passed from office to office. But I think we're already well down the road your way, in my view, this is just me talking out loud here among friends, that, you know, the statement is actionable if in and of itself, regardless of whether it has any effect, it has the capability of misleading. Is that something you agree with? I vigorously agree with that, which is to say that it is, that statement from King reflects that it is the content of the statement viewed in isolation that tells you whether or not it is material. It is sort of an objective test. It doesn't turn on the actual effects on the government. The government doesn't have to show that it did conduct an investigation. And that's precisely why it is an essential element but not an essential conduct element. It goes to the content of the statement itself and not the making of the statement. In our view, it's the making of the statement that defines where there is venue, the place where the statement is made, potentially the place where it is received. But the government's understanding of the case is all about effects, whether you look at their theory focusing on materiality. Well, as I understand, I'm sorry, Mr. Shanmugam, compared to Rodriguez-Moreno, where the Supreme Court decided that there were two essential conduct elements in that case, the kidnapping and the use of the firearm in relation to that violent felony. And it seems that the Justice Scalia's dissent, his dissent's point was you have to have both together in order to combine them. And that only took place in Maryland. But the majority didn't see it that way. As long as Congress defined two essential conduct elements, that was enough. And I take the government's point to be that the two essential conduct elements here are not only the making of the fact but that the speech itself be material. So what's wrong with that? Well, Judge Sanchez, I think on balance Rodriguez-Moreno actually helps us, and let me explain why. We acknowledge that when you look at the statute at issue 924C1, that there are two parts of conduct that are at issue. There's the carrying of the firearm, and then there is the commission of the crime of violence. And the disagreement, as I understood it, between Justice Thomas's majority opinion and Justice Scalia's dissent was about the timing of those two conduct elements, whether they had to be occurring at the same time or whether you could consider the entirety of the crime of violence their kidnapping. But the critical fact is that the court viewed kidnapping appropriately as conduct. What the majority said is the act of kidnapping doesn't stop at the moment at which you actually grab somebody. It continues for as long as you're holding them against their will. Well, the statute 924C says during. I think that was the focus of the discussion. And there's a temporal flavor to it. Correct. 1001 talks about a single event, which is the making of the misstatement. And I think it's critical to keep in mind that the government's theory here, and the reason why it's limitless, Judge Donato, is because the government's theory here is that it is the fact that the investigation was taking place in the Central District of California that is dispositive, that there was an actual effect here because the agents went back to investigate. And the reason why that's limitless is that the government could make that decision anywhere. Let's say that what took place in this case is that the government made a calculated decision that the most government-friendly juries in the country are in North Dakota. So let's say that the government decided to put the U.S. attorney in North Dakota in charge of the investigation or even to indict the case there. I think that the government would have to say that there would still be venue. Now, the government's theory in its brief relying on the Pace decision is that, well, there's some sort of amorphous causal limitation on this. But Pace involved a statute that itself had a causation requirement. And I think that the problem with that theory is that if you put someone in charge of the investigation who's in another district, surely a causation requirement would be met. And so that's the great danger. But I think the bigger problem is the government did not take into account King, which is binding on this panel. Let me ask you this. Where do you think the case should have been tried? So I think the case could have been tried either in Nebraska or in the District of Columbia. No, but there are two separate false statements. He made false statements in the District of Columbia and Nebraska. So are you asking for two trials? I mean, how are you going to work that out? So I think that there are a couple of things that the government could do in order to bring these counts within a single trial. One is to charge a scheme, and the government did do that in count one. And the other is that I believe that there's provision of the criminal rules that essentially allows counts to be tried together under certain circumstances wherever there is venue over one count. That's obviously a matter for the government to assess in the event that this court vacates, but we would acknowledge in the light of the Supreme Court's decision this term that the appropriate remedy on this point would be a new trial. But I think the fundamental problem here with the circuits that have gone the government's way, and there is clearly a circuit conflict on this issue already, though the government quibbles a little bit about the scope of that conflict. The problem with those decisions that go the other way is that they really don't come to terms with this distinction between essential elements more generally and essential conduct elements more specifically. And to the extent that the government... So let me pick up on one of those with OceanPro, and that was building off of a prior Fourth Amendment, that Congress has the power to define the essential conduct elements of a criminal offense in terms of their effects, thus providing venue where those effects are felt. Do you agree with that statement as a general proposition that Congress can define in terms of its effects? We do agree with that, and I would actually point to the fact that there are statutes that expressly do that, and I think the best example, Judge Sanchez, is the witness tampering venue provision, which we cite in our brief 1512I. But isn't that a special venue provision that's already been... And Congress... So is there anything outside of that, you know, that defining something by its effects outside of a explicit special venue provision? We proceed, and I think the next paragraph of our brief, I want to say it's on page 37, to cite statutes that define their elements in terms of effects. So Congress could do it either way. And ultimately, this is... The touchstone here is what Congress did with regard to the offense in question. But the one thing I would add to that... Well, so what Congress did with regards to that element is put material on there. I guess if it was just making or the uttering of the statement, then I'd see your position stronger, but they add materiality to that particular section, and in my mind, that seems to be the sort of the more winning argument. Judge Mendoza, it's a totally different case if the way that Congress wrote section 1001 is to say that the crime is making a false statement that has an actual effect on the government. Because I think in that case, the government could say, well, Congress made the actual effect, an element. That statute is closer to the statute that this court considered in ANGADI, section 1014, which has the requirement of a purpose of influencing the action of a federally insured bank. And isn't the whole notion of the proper venue being where you have the witnesses for ease of witnesses, for ease of investigation, for ease of the parties involved. And if a person is running around the world, the country, and making false statements all over the place, but the core of what's happening is at a specific location, why would that be improper? To the extent that that's true, Judge Mendoza, in this case, that points decisively in our favor. This is really an unprecedented prosecution where a member of Congress is being hauled across the country simply because the AUSAs and the agents happen to be here. We're hard pressed to think of any example. We haven't been able to come up with any example that's even remotely comparable in that regard. Obviously, when you look at the defense witnesses, people like Congressman Fortenberry's wife, Ms. Celeste, she was in Lincoln, Nebraska. She was not in Los Angeles, California. Now, that's not dispositive, the fact that you have to haul the defendant across the country. There are cases that say that the defendant's place of residence is not necessarily the venue in criminal prosecutions. What the Supreme Court has made clear, and we cite the Johnson case for this, but there are others, is that the tie goes to the defendant in these circumstances. What the constitutional venue and vicinage clauses do is to essentially create a clear statement rule. So if there is ambiguity about which elements are the essential conduct elements, that ambiguity favors the defendant. And I would respectfully submit that when you read Rodriguez-Moreno together with Cabrales, a unanimous decision written by Justice Ginsburg at almost the same time, the Supreme Court has made clear that the requirement of a conduct element has teeth. And I don't think the government has a coherent theory for why materiality Can I just bring you back to your earlier point, because I'm a little bit confused by it. You're saying that if Congress had defined materiality or the statute itself as having an effect as opposed to the potential to have an effect, that would have been a venue applying effects analysis. Why? What's the distinction between potential effect versus actual effect? I think it's at least closer, because you could construe that statute if you took an expansive view as suggesting that where the statement is being directed is somehow relevant, that you have to show that in order to establish liability. Well, I mean, wouldn't one way, that would be Congress designating a venue as opposed to resorting to the locus delecti test, which is what we have to do from 1001. And there might be, just to put a pin in this, Judge Sanchez, there might be a distinction on whether or not it was actually a venue provision or the elements of the offense. I think if Congress writes the statute like it wrote the witness tampering statute, like it also wrote the murder and manslaughter venue provision, which we cite, I think it's section 3236, then it's unambiguous that Congress intended for venue to lie in that jurisdiction. I think where it gets hazier is it becomes a matter of statutory interpretation when Congress puts it in the elements of the actual offense. I didn't mean to interrupt. No, I've let you go a little bit over and I just want to check if my colleagues have any other questions. I have one quick question. Now, just to make sure I understand, your client was prosecuted only for the false statement and not for any campaign finance violations, is that right? Yes, that is correct. And that is what makes this case a little bit unusual. After all of this investigation, the only thing that came out of it in terms of an actual trial and prosecution was the prosecution of our client under section 1001. And as you know from your experience, that's pretty unusual. And it certainly is very unusual in the context of a member of Congress. I see that I'm over my time. I would love whatever time I can get for rebuttal. I'm also happy to answer any questions on the issue of materiality, which we have touched on already. But I think our submission there is really straightforward. It is that to the extent that the jury was permitted under the district court's instruction to convict based on a theory of materiality that the government now recognizes as improper, namely that the statement triggered an investigation into the statement itself, that the instruction that was given was incomplete and therefore incorrect, and that that would be an independent basis for evocatory here. Thank you. Thank you. Mr. Robbins, you'll have a little bit of extra time as well. Thank you. Good morning, Your Honors. May it please the Court. Alexander Robbins on behalf of the United States. At the outset, I would like to address what I think is a mistake that my colleague made just on this discussion of sort of procedure of trying counts together. Under this Court's law, and I think all the circuits, venue is evaluated count by count, right? And it's a constitutional requirement. So there is no provision for trying related counts, factually related counts together without the defendant's consent. Now, a defendant can consent to a transfer, and there are some provisions, I think, for like 7203 and the tax laws that let you do that with the defendant's consent. But I think at bottom, the defendant's argument here has to be that he thinks the count two should have been tried in Nebraska, and the count three should have been tried in Washington, D.C., even though they involve essentially the same underlying conduct. And count one, I guess, should have been tried either or. But why not at one of those locations? And why not at one of those locations? That's where he made those allegedly false statements. I think that goes, I guess, to the fundamental point here that we think the district court got it right, and the reason is, is that there's nothing anomalous in looking at the effects or in the 1001 context, potential effects of a crime when it's tied to an element to figure out where the crime takes place. I think the easiest example for this, we cite in our brief, the McLuhan case, is homicide. Right? It's often true that the effects of a crime are something that comes from the defendant's conduct, but are not sort of fully within the defendant's control, like where someone dies. And the common law rule was you could prosecute a case where the shot was fired or where the person ultimately died. Congress has subsequently, by statute, narrowed that to just where the injury was inflicted. Well, but Congress has to work within the framework of Article III and the Sixth Amendment, the venue and vicinage clauses that you're very familiar with. And you say it's not anomalous, but let me ask you, you had a Nebraska citizen elected to represent the people of Nebraska in the House of Representatives who made a misstatement of fact in Nebraska. However, did that case get tried in Los Angeles? I think on the facts here, we've talked a lot about the law, but I think the facts here also strongly support the government's case, because the defendant, time and again, chose both the location and the timing of these events. How is that consistent with Article III, Section 2, and the venue clause in the Sixth Amendment and our long tradition of you're tried in the community where you committed your crime? That is your entitlement under the Constitution. Said twice, as Justice Ginsburg pointed out. Yes, Your Honor. I have a legal response and a factual response. The legal response is the crime was material to, the false statement, the crime was material to an investigation in the Central District of California. And the reason that that investigation was in the Central District of California was that the defendant chose to have a fundraiser here in Los Angeles. The defendant reached out to Dr. Ayoub a second time asking for another fundraiser in Los Angeles. He chose that location. That is what prompted the FBI to get involved with the phone call between Ayoub and the defendant. And the defendant chose the timing of that as well. And the second meeting in Washington, D.C., the defendant chose that location too. The defendant asked, he reached out, his lawyer called the prosecutors here in Los Angeles and asked to have a second meeting so he could clarify his statements from the first. And they discussed where to have it and he requested that the meeting be in Washington, D.C. So in this case, time and again, the defendant chose the underlying actions and the, in the case of the second meeting, literally the location of that second meeting. On the fairness point. I mean, you understand Mr. Shermergum's point that maybe there are factual circumstances that might tie this case a little bit more closely to Los Angeles. But we have to look at what Congress intended. And in theory, you could have a different case where someone starts to generate a new investigation in the District of Wyoming. So what is the limiting principle to this notion of materiality as being a venue generating provision? I appreciate that. I wanted to get the South Dakota example or the Wyoming example, I'll call it. I think that in the government's limiting, the government has a number of limiting principles here. The first and foremost of which is this court's requirement from PACE that venue be a direct causal relationship to the conduct. But to answer that specific hypo, our limiting principle we think is more restrained than theirs. It seems under the defense theory that you could have anybody, you know, you could have an agent on vacation in Wyoming from Los Angeles and just go into a Zoom call or a telephone call and boom, now you have venue in Wyoming. Our position is that on the materiality element, you have to look at where the statement was material. That is, where it had an effect or was capable of having an effect. And that's not going to be Wyoming if there's no investigation in Wyoming. Here there was a full investigation of a number of people. That wasn't disputed. But you agree that an investigation doesn't have to actually be in place. So, you know, so now you get to the other side, which is the government can start an investigation and thereby create venue in essence almost anywhere. And to echo my colleague's point, that seems a little troubling for purposes of a constitutional provision. Mr. Sanchez, I think that brings us to another limiting principle, which where we agree with this case. But venue generally has to be evaluated based on the objective circumstances that exist at the time the crime was committed. So what you couldn't do, we agree in this case, is take the recording of the interview from Nebraska and, you know, forward it as an email to the District of Arizona and say, hey, can you listen to this? And now we have venue in Arizona. Materiality is evaluated at the time the statement was made. But that is what the Second Circuit essentially did in its case, right? You know, there was a deposition in Nashville and there were false statements to an IRS agent. But the Second Circuit reasoned that because that deposition transcript was moved over to the Second Circuit's jurisdiction, that it had an effect on the investigation there because people were considering what to do with those false statements. So what you're suggesting shouldn't happen in Arizona seems to be what the Second Circuit did. I don't read Copeland that way. I don't think that's what happened in Copeland. It's not my recollection of it. The statement, the investigation in the SDNY in Copeland existed when the deposition happened already. And certainly if it didn't, then we wouldn't go any farther than that. What's tricky about this conceptually, just in terms of wording, is that we all agree that normal venue cases deal with effects. But we also agree that with materiality, you don't need an actual effect. A potential effect will suffice. So we're doing what the district court did as well, which is applying this concept of a potential effect based on objective circumstances to the normal effects discussion of venue from the case law and sort of the background principles. I have to say, I know you're hanging your hat on effects, but we expressly said in King that a misstatement need not actually influence an agency to be material. Accordingly, our concern is not with the extent of the agency's reliance, but rather on the intrinsic. So I don't see how you say, well, wherever the government hears it and does something, we're good with the fact that we'd look only at the intrinsic property of the statement. I think those are unreconcilable propositions. I judge not. I agree with that completely. We're bound by King. We're not bound by the Second Circuit. But no one's disputing that you don't need actual effects. The district court understood that, which is why the district court's jury instruction distilled all of this discussion correctly and simply to had an effect or was capable of having an effect on the investigation in the Central District of California. That's right. And so when we're having this discussion, we're talking about potential effects and actual effects because that's the nature of materiality. So if, for example, on the way home, the agents and tragically the plane crashed on the plane ride home from Nebraska to Los Angeles and the recording and all the notes from the conversation were lost, right, the statement would still be material even if no one ever received it because when the statement was made, objectively that statement was capable of influencing the investigation in the Central District of California. Let's say the L.A. office passed it on to Oklahoma. The team moved to Oklahoma for whatever reason. Now you're saying, under your reasoning, this defendant could have been tried in Oklahoma. No. And that was my example a couple of minutes ago. How can that not be? Because the investigation's ongoing in Oklahoma and it's halfway through and they don't actually charge the defendant until they're in Oklahoma. That's when it ripens to completion. The team's in Oklahoma. They charge him there. Everything they've done has been based on the false statements. By your reasoning, he could be tried in Oklahoma. No. And that was my Arizona example a couple of minutes ago. Materiality is evaluated at the time the statement was made. The statement was made in Nebraska. Materiality is evaluated at the time the statement was made and when the statement was made, the false statement, the lies, in both D.C. and Nebraska were material to an investigation in the Central District of California. And to return to Judge Sanchez's question on a tweak on that, well, what if there hadn't been an investigation and we're trying to figure out hypothetically how does this play out in the kidnapping example? It's the same analysis, right? Objectively, this statement was material to where? In the kidnapping example, it's a little dicier because you don't have the facts of an actual investigation. But if, for example, someone travels from Los Angeles to Las Vegas and says, my spouse was kidnapped in Las Vegas. I haven't seen her in days. Please go look for her in Los Angeles. That statement would, I think, be material in Los Angeles because objectively it's capable of influencing a governmental investigation which is going to start because of the statement in Los Angeles. Let me ask this. There's no dispute that materiality is an element of the offense. It's just whether it's an essential conduct element. Mens rea is not thought of as a conduct element. What's the difference between the two? Because, you know, mens rea is about knowing and willingly making the false statement. It describes a certain type of statement or the defendant's state of mind in making that statement. Immateriality is about the gravity of the statement. And isn't there a similarity? Both describe or are adjacent to aspects of the conduct at issue. But why is one an essential conduct element and the other one not? I think if your crime is it's a crime to hit somebody, right, and then you have an aggravated version of that crime and it's a crime to hit somebody and cause bodily injury or a crime to hit somebody such that it kills them, then the common law rule is where the injury was inflicted as well as where the person ultimately died. You often have conduct elements that are phrased as things that are downstream results, to use the reply phrase for it, downstream results from what the defendant did. In fact, one of the cases in McLoone cited is literally damming up a river and having venue where the downstream, literal downstream effects of damming up the river are felt. Now, I think for mens rea and for this jurisdictional hook, the reason it makes sense that those are not conduct elements, it's not just a question of the defendant's physical conduct. You can't, you couldn't have a rule where mens rea was an element that under Rodriguez-Moreno is something that would be prosecutable wherever the defendant had a thought, right, because you can't, there's no way to know where a defendant had a thought unless you tie it exactly to when he did an act, in which case now we're back to the same place we would be anyway. For the jurisdictional element, it also makes sense. I mean, remember that the Cabrales explains that the, and this is another limiting principle that we agree with, you can't try all 1001 cases in Washington, D.C. Why? But isn't the better, consistent with the Constitution, isn't the better practice, you can do an investigation wherever you want, but at the, when it comes to charging and trying the case, you just refer it to the local office where the, where the false statement was made. Why isn't that a better, more consistent, constitutionally sound answer? Why drag this, these people all across the country to foreign venues and not just pass it off to the district in which the statement was made? It's not constitutionally required to try this particular defendant in two different places. And Congress, of course, can provide by statute and rules to have particular venue provisions. And in fact, the federal rules of criminal procedure allow for a transfer of venue, which is not a constitutional rule, for things like convenience to the parties and fairness to the parties. And there was such a motion made in this case. The defense asked to transfer venue to Nebraska in this case. The district court denied that in its discretion. And the defense isn't appealing that prudential decision, that discretionary decision. The defense is here making a constitutional argument that constitutionally he can't be prosecuted in the district where the statement was material, despite the fact that Congress has under 3237, we point out in our brief, specifically reversed the holding of Johnson, the main case they rely on from the Supreme Court, saying that you have to read these things restrictively. What Congress did is said in the advisory notes, the 3237, we're amending this statute, the first line as well as the second paragraph, in order to omit the necessity of having a special venue provision. So now we're just back to what the constitutional floor is. And the Constitution does not require either that we try this defendant in two different places. It also doesn't require, frankly, that we put an agent in Los Angeles on speaker phone, which is essentially what the defense argument amounts to, that if we had a speaker phone on during that conversation in Nebraska and in D.C., there'd be no problem. But without the speaker phone, if your phone is recording audio and you're going to take it back and go off that audio when you get back home, that doesn't count. There's no argument that if this interview had taken place over the phone, the venue could be proper in Los Angeles? As far as I'm aware, no. I mean, I don't want to speak for my colleague, but I'm pretty sure they concede that. I think they also concede that if the speaker phone were on, sitting there with an agent on the other line, there would be venue in Los Angeles. But that's not what happened. I understand. He made a statement to an agent in Nebraska. He didn't cross state lines. And our position, Your Honor, is that the Constitution does not require you to use a speaker phone. And we think that's the more common sense proposition. It's also more common sense that you don't have to have two different trials or three different trials, depending on how you apply the defense argument to count one, which is a scheme that took place in three different places, as we see it. But it's not clear, it's not reasonable that the Constitution requires two or three different trials for the same conduct. And it doesn't. And Congress made that call in 3237 by saying if a crime occurs in more than one place, you can try it in any of those districts, which is exactly what happened here. Let me see if my colleagues have any other questions. Your Honor, with that, we would submit on our brief on the materiality issue. We think the district court got this one right on both issues and correctly instructed the jury. Unless the court has any questions, we'd ask you to affirm. Thank you. Thank you. Thank you, Your Honors. Just a couple of quick points, first about the facts of this case and second about the government's test. To the extent that my friend, Mr. Robbins, pointed to certain facts as establishing venue in California, I would respectfully submit that he was mistaken. He pointed to the fact that the fundraiser took place in California. But of course, that was not the charged conduct. And I think that the government, in its brief, seems to concede that that would be insufficient in and of itself. If this was a campaign finance case or even a conspiracy case, like the hypothetical that Justice Ginsburg posited in her opinion in Cabrales, that would be different. But this is a case about the making of false statements much later than the actual fundraiser. And to the extent that the congressman, quote unquote, chose D.C. for the second meeting, we're not disputing that by virtue of the fact that the second interview took place in D.C., that at a minimum that statement, and potentially both statements, could be the subject of a trial in the District of Columbia. But that just underscores the fact that it is where the statement is made that matters. With regard to the government's test, the government seems to concede that even a potential effect is sufficient. My friend's hypothetical involving the unfortunate plane crash involving the agents underscores that. Even if there is no actual effect because the statements never make it to California, the government's position would be that Venue lies there. And with respect, I think that my friend's answers to Judge Donato's hypotheticals were incoherent. It's hard to understand why under the government's test. If the agents actually pick up and move the investigation to Oklahoma, why there would not be Venue in Oklahoma itself, and in the hypothetical involving a statement made in Nevada about a wife being kidnapped in California, our position would be that it depends how the statement is made. If it is made in person in Nevada, Venue only in Nevada. If it's made over the telephone to someone in California, there may be Venue in California as well. Ultimately, in our view, the fundamental problem here is that the government's theory at bottom is limitless. It turns Venue from something about the conduct itself into something about the potential effects, effects that are within the complete control of the government. And not only in this case involving a sitting member of Congress, but in any other case in which the government uses the aggressive prosecutorial tool of Section 1001, the government will essentially be able to lay Venue anywhere if the district court's ruling here on Venue is upheld. A man's life lies in ruins as a result of the government's decision to prosecute this case and to prosecute it in the Central District of California. And we would submit, at a minimum, that the congressman is entitled to a new trial. I don't have any other questions. Thank you. Thank you, counsel, for your very hopeful arguments. The matter will stand submitted.
judges: SANCHEZ, MENDOZA, Donato